IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:05CV00521

| | |
|---|---|
| FRS, Inc., a North Carolina Corporation, NAGIM, INC., and DISASTER RENTAL AND SUPPLY, LLC, <br><br>Plaintiffs, <br><br>v. <br><br>CARIM, LLC, a South Carolina Limited Liability Company, RONALD M. COX, FIRST RESTORATION SERVICES, LLC, a South Carolina Limited Liability Company and FIRST RESTORATION SERVICES OF CHARLESTON, LLC, a South Carolina Limited Liability Company, <br><br>Defendants. | ORDER |

**THIS MATTER** is before the court upon a motion by Defendants Ronald M. Cox ("Cox"), First Restoration Services, LLC, and First Restoration Services of Charleston, LLC (collectively, "SC LLCs"), to dismiss for lack of personal jurisdiction. The parties have filed briefs with supporting affidavits and this matter is ripe for disposition.

**I. BACKGROUND**

First Restoration Services, Inc. ("FRS") is a North Carolina corporation with its principal office and place of business in Charlotte, North Carolina. NAGIM, Inc. ("NAGIM") is a Nevada corporation and Disaster Rental and Supply, LLC ("DRS") is a Nevada limited liability company both with offices in Charlotte, North Carolina. Frank Headen, a North Carolina resident, is CEO of FRS, president of NAGIM, and the manager of DRS. CARIM, LLC ("CARIM") is a South Carolina limited liability company with an office and place of business in Charleston, South

1

Carolina. The SC LLCs are limited liability companies formed by Cox, with their principal offices and places of business in Myrtle Beach, South Carolina.

FRS has operated in North Carolina and throughout the United States, including South Carolina, under the trade name "First Restoration Services" since no later than July of 1992. FRS is a full service restoration company, providing a wide range of services including demolition, reconstruction, corrosion control, deodorization, soot and smoke removal, water extraction and dehumidification, contents and structure cleaning and high tech restoration. FRS also, among other things, provides project management, complete recovery plans and contracting throughout the continental United States.

On or about August 2002, Cox approached FRS and proposed a business arrangement whereby Cox and FRS or its principals would co-own CARIM, a disaster recovery and restoration company to be operated in South Carolina. The parties agreed to the following material terms:

i) FRS would loan start-up funds and additional loans thereafter to CARIM;

ii) CARIM would be allowed to use FRS's Tradenames and Marks in certain South Carolina counties;

iii) CARIM would make royalty payments to FRS;

iv) Frank Headen and Mark Headen [FRS' CEO and his brother, respectively] would own 51% of CARIM and Cox would own 49% of CARIM until the Loan was repaid;

v) Once the Loan was fully repaid, Cox would become 51% owner of CARIM; and

vi) Cox would personally guarantee the Loan.

While these terms were agreed to in principle by June 2003, the Agreement was never formally executed. Thereafter, between August, 2002, and November, 2005, FRS loaned CARIM $359,190.00. The loans were made by payments sent or wired from North Carolina to South Carolina. Cox agreed to personally guarantee payment of these loans. On April 30, 2003, FRS

sent a check from North Carolina in the amount of $120,191.00 to Cox in South Carolina, at his request, with the condition that he only negotiate the check if he agreed to complete an agreement in writing within thirty days and, if such agreement was not reached, that Cox would personally execute a promissory note for the Loan. Cox negotiated the check. Additionally, NAGIM and DRS leased vehicles and equipment from North Carolina to CARIM for the operation of CARIM's business for which monthly payments were due. In October of 2005, Cox formed the SC LLCs allegedly using FRS's trade names, marks, and/or works.

Plaintiffs filed the present Complaint alleging that CARIM and Cox breached the Agreement. They also allege that Cox created the SC LLCs using FRS's trade names, marks, and/or works without authorization in violation of a License Agreement. Cox and the SC LLCs have filed the present motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2).

Cox states in his affidavit that he is a South Carolina resident with no property, office, bank account, or income sources in North Carolina. He alleges that the Agreement was negotiated in South Carolina and that he only sporadically visited North Carolina on the following occasions: eight to ten times in 2002 to attend seminars; two or three times thereafter to meet with Frank Headen regarding CARIM; and once in 2003 or 2004 to attend a concert with his wife, Frank Headen, and Headen's wife. Cox also maintains that the SC LLCs have never operated or engaged in business and have no relationship with North Carolina.

The Plaintiffs, however, allege that the Agreement was primarily negotiated in North Carolina and that Cox made at least 27 trips to Charlotte to meet with FRS, sent over 30 emails to FRS, and made 75 phone calls to FRS in connection with the Agreement and/or the operation of

CARIM between July 3, 2002, and February 21, 2006. At least 11 of the trips were to attend FRS' training programs.

**II. MOTION TO DISMISS**

When the court rules on a 12(b)(2) motion without conducting an evidentiary hearing, the burden is on the plaintiff to make a prima facie showing that personal jurisdiction exists. Combs v. Bakker, 886 F.2d 673, 676 (4th Cir. 1989). Further, "the court must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." Id.

To meet the burden of showing personal jurisdiction, Plaintiffs must demonstrate that (1) the Defendants' activities fall within the language of North Carolina's "long-arm" statute, and (2) the exercise of jurisdiction would not violate the due process clause of the Fourteenth Amendment to the United States Constitution. See Mylan Labs. Inc. v. Akzo, N.V., 2 F.3d 56, 60 (4th Cir. 1993). The North Carolina Supreme Court has liberally construed the North Carolina long-arm statute to extend to the full jurisdictional powers permissible under federal Due Process. Vishay Intertech., Inc. v. Delta Int'l Corp., 696 F.2d 1062, 1065 (4th Cir. 1982).

**A. Long-Arm Statute**

North Carolina's long-arm statute provides twelve bases for asserting personal jurisdiction over foreign defendants. N.C. Gen. Stat. § 1-75.4 (2005). Plaintiffs assert that subsections 1-75.4(5)-(6) are applicable herein. Subsection 1-75.4(5) authorizes personal jurisdiction in cases involving local services, goods, or contracts. Subsection 1-75.4(6) authorizes it in cases involving local property. Specifically, Plaintiffs claim that the Defendants are subject to North Carolina's long-arm statute under 1-75.4(5)-(6) due to: injuries suffered by Plaintiffs as a result of Defendants' acts and omissions in and outside of North Carolina; the injuries suffered by Plaintiffs

4

in North Carolina as a result of Defendants' acts and omissions; promises made by Defendants to Plaintiffs to make payments to Plaintiffs in North Carolina and to provide accounting for property Defendants acquired in North Carolina; and the things of value shipped and wired from Plaintiffs in North Carolina to Defendants in South Carolina.

Plaintiffs contend that Cox's numerous acts in North Carolina in furtherance of the formation and operation of CARIM subject him to this court's jurisdiction. The court finds that Plaintiffs have met their burden of demonstrating personal jurisdiction under North Carolina's long-arm statute with respect to Cox.

Plaintiffs also contend that the SC LLCs' continued use of FRS's trade names, marks and/or works in violation of the License Agreement entered into by Cox, wherein he consented to North Carolina's jurisdiction for related claims, subject the SC LLCs to this Court's jurisdiction. However, the SC LLCs are limited liability companies and did not exist when the Agreement was made. As a result, they were neither parties to the Agreement nor bound by Cox's consent. The Plaintiffs must demonstrate that the SC LLCs' own actions, or acts by Cox that are binding upon them, fall within the language of the long-arm statute. Having failed to do so, the Plaintiffs have not met their burden with respect to the SC LLCs.

**B. Minimum Contacts**

Because Plaintiffs have not met their burden to show that the long-arm statute authorizes jurisdiction over the SC LLCs, it is only necessary to conduct a due process analysis with respect to Cox. The Supreme Court has fashioned two tests for determining whether a defendant's contacts with the forum state are sufficient to confer personal jurisdiction. First, if the cause of action is unrelated to the defendant's activities in the forum state, the plaintiff must prove that the contacts

are "continuous and systematic" to support the exercise of "general jurisdiction" over the defendant. Helicopteros Nationales de Colombia v. Hall, 466 U.S. 408, 415-16 (1984).

However, if the cause of action is related to or arises out of defendant's actions within the state, the plaintiff can establish more limited "specific jurisdiction" by proving that:

> "[T]he defendant has created a substantial connection to the forum state by action purposefully directed toward the forum state or otherwise invoking the benefits and protections of the laws of the state; and (2) the exercise of jurisdiction based on those minimum contacts would not offend traditional notions of fair play and substantial justice, taking into account such factors as (a) the burden on the defendant, (b) the interests of the forum state, (c) the plaintiff's interest in obtaining relief, (d) the efficient resolution of controversies as between states, and (e) the shared interests of the several states in furthering fundamental substantive social policies."

Lesnick v. Hollingsworth & Vose Co., 35 F.3d 939, 945-46 (4th Cir. 1994). A substantial connection with the forum state may be established by a single contact if it is sufficiently purposeful and egregious in its impact and "gives rise to the requisite liability asserted in the suit." Barclays Leasing, Inc. v. Diversicare Corp. of Am., 768 F.Supp. 184, 187 (W.D.N.C. 1991). Additionally, specific jurisdiction may attach if the defendant has fair warning that he may be sued in the forum state for injuries arising from acts he purposefully directed at the forum state. Tom Togs, Inc. v. Ben Elias Indus. Corp., 348 S.E.2d 782, 786 (N.C. 1986). Plaintiffs herein assert that their causes of action arise out of Defendants' activities within North Carolina and thus seek to establish specific jurisdiction.

In the present case, Plaintiffs assert that there is specific jurisdiction because Cox initiated numerous contacts with North Carolina through his 27 visits and had "fair warning" that he may be sued within the State. Both the License and Non-disclosure Agreements contained mandatory forum selection clauses designating Mecklenburg County as the venue for any dispute. The Non-

disclosure Agreement additionally states that the terms would be deemed to have been performed in North Carolina. The Security Agreement, Promissory Note, and Cox's personal guarantee all indicate that North Carolina law shall apply. While not absolutely determinative, the choice of law clauses evidence the intent of the parties to invoke the laws of the State of North Carolina and are a factor in determining whether minimum contacts exist and due process is satisfied. <u>Tejal Vyas, LLC v. Carriage Park Ltd. P'ship</u>, 600 S.E.2d 881, 887 (N.C. Ct. App. 2004).

Plaintiffs also contend that Cox purposefully availed himself of the privileges and protections of North Carolina by entering into an agreement in which much of the performance either did, or was supposed to take place in North Carolina. The loaned funds were wired or mailed from North Carolina and the loan repayments were supposed to be made to FRS in North Carolina. CARIM and Cox used equipment valued at over $120,000.00 that was delivered from North Carolina. Payments for the equipment were supposed to be made to NAGIM and DRS in North Carolina. Many of CARIM's invoices were payed by FRS from North Carolina. Due to Defendants' use of FRS's trade name, marks, and/or works to promote their businesses, companies have contacted FRS in North Carolina for payment of Defendants' debts. Cox has also conducted marketing activities for FRS and CARIM in North Carolina, personally traveling to Wilmington, North Carolina for that purpose. These allegations sufficiently indicate that Cox created a substantial connection to North Carolina by invoking its benefits and protections throughout his agreements with the Plaintiffs and that he thus had fair warning that he may be sued in the State.

Finally, asserting jurisdiction over Cox does not offend traditional notions of fair play and substantial justice. The burden on Cox appears minimal because he was able to make 27 trips to

the State to conduct business in the past. Additionally, there is an interest in trying the case in North Carolina because the Agreement, payments, and equipment leases all took place in the State. Because the Plaintiffs have offices in North Carolina, made payments and transported equipment from North Carolina, and identified the State in their forum selection and choice of law provisions, they also have an interest in litigating in the State. Finally, the State itself has a "manifest interest in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors." Tom Togs, 348 S.E.2d at 787.

Accordingly, the court finds that Plaintiffs have established personal jurisdiction over Defendant Cox. However, Plaintiffs have not met their burden to establish personal jurisdiction over the SC LLCs.

**IT IS THEREFORE ORDERED** that Defendant Cox's Motion to Dismiss for lack of personal jurisdiction is hereby **DENIED** and the Motions to Dismiss of the SC LLCs are hereby **GRANTED**.

Signed: July 12, 2006

Graham C. Mullen
United States District Judge