IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:05-CV-00521

| | |
|---|---|
| FRS, INC., a North Carolina Corporation, NAGIM, INC., and DISASTER RENTAL AND SUPPLY, LLC, <br><br>　　　　Plaintiffs,<br><br>vs.<br><br>RONALD M. COX,<br><br>　　　　Defendant. | **ORDER** |

**THIS MATTER** is before the Court upon Defendant Ronald M. Cox's Motion for Summary Judgment. For the reasons set forth below, the Motion for Summary Judgment is DENIED.

**I.   Background**

This lawsuit arises from a failed business venture between Plaintiff FRS, Inc. ("FRS") and Defendant Ronald M. Cox. FRS, a North Carolina corporation, engaged in the restoration of property damaged by fire, flood or wind. Plaintiffs Nagim, Inc. ("Nagim") and Disaster Rental and Supply, LLC ("DRS") lease vehicles and non-vehicular equipment such as dryers and blowers to agents and affiliates of FRS for use in remediation operations.

Defendant Ronald Cox approached the President of FRS, Frank Headen, in 2002 in order to affiliate with FRS and expand its business into South Carolina. After negotiation with Headen, Cox formed Carim, LLC ("Carim") to serve as the business entity to operate as a joint venture or partnership between Cox and FRS. The parties agreed that Cox would have forty-nine

percent ownership of Carim and Frank Headen and his son, Mark Headen, would own the remaining twenty-six and twenty-five percent, respectively. Cox was to control the day-to-day operations of Carim while FRS was to provide the funding and equipment for FRS' expanded operations in South Carolina.

Pursuant to their agreement, FRS loaned Carim more than $400,000 including a check made for $120,191.00 accompanied by the condition that by cashing the check Cox agreed to personally guarantee the funds advanced to Carim as of that date. Cox endorsed the check on behalf of Carim and placed the proceeds of the check into Carim's account. Frank Headen contends that in addition to the salary, vehicle and company benefits Cox received through Carim, Cox also used Carim funds to build a $15,000 home office and purchase Christmas gifts for his family. Cox and Headen's business relationship ended in early 2006 when Cox left Carim to work for Coastal Restoration Group, a business he formed in 2005, and continues to compete with FRS today.

The only claim for relief remaining for disposition is FRS' claim against Cox to recover over $400,000 in loans made to Carim which it claims Cox personally guaranteed. Cox argues that he never agreed to personally guarantee the funds, and has moved for summary judgment on the ground that the Statute of Frauds precludes FRS from recovering because FRS cannot produce any guarantee by Cox in writing. FRS argues that summary judgment is not appropriate because under North Carolina law Cox's guarantee is excepted from the Statute of Frauds under the "main purpose rule."

**II. Discussion**

Summary judgment is appropriate only if "the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In a ruling on a motion for summary judgment, the court is required to view the facts in a light most favorable to the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

The Statute of Frauds requires that a promise to pay the debt of another to be in writing in order to be enforceable. However, the "main purpose" exception to the Statute of Frauds provides that "where the main purpose and object of the promisor is not to answer for another, but to subserve some pecuniary or business purpose of his own, his promise is not within the statute of frauds." Terrell v. Kaplan, 613 S.E.2d 526, 528 (N.C. Ct. App. 2005) (quoting Stuart Studio, Inc. v. Nat'l School of Heavy Equip., Inc., 214 S.E.2d 192, 193 (N.C. Ct. App. 1975). Thus, in order to survive summary judgment in this case, plaintiff FRS must show that a rational juror could find 1) that Cox agreed to personally guarantee the amounts loaned to Carim, and also 2) that Cox also had a significant pecuniary or business interest in that transaction.

*1. Cox's personal guarantee of the amounts loaned to Carim*

In surviving a defendant's motion for summary judgment a plaintiff may not rest on mere allegations or denials, but must conclusively demonstrate a triable issue of fact exists. Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994). This court finds that although the issue of whether Cox personally guaranteed the funds advanced by FRS is essentially one person's word against another's, the fact that Cox drafted a document entitled "Guaranty of Payment" whereby he was to personally guarantee the funds advanced by FRS raises a triable issue of fact. Even though the document is unsigned, this court finds that based on this evidence a rational juror could find that

3

Cox orally promised to personally guarantee the funds advanced by FRS.

   *2.   Cox's pecuniary interest in the transaction*

Even if a rational juror could find that Cox orally promised to personally guarantee the advances from FRS, in order for the promise to be binding, a rational juror must also be able to find that the oral promise is excepted from the Statute of Frauds. The "main purpose" exception to the Statute of Frauds states that "if it is concluded that a promisor has the requisite personal, immediate, and pecuniary interest in the transaction in which a third party is the primary obligor, then the promise is said to be original rather than collateral and therefore need not be in writing to be binding." Terrell, 613 S.E.2d at 528.

In situations such as the present case, where a shareholder or director has personally guaranteed the debts of their company, the mere fact that the stockholder or director will receive some indirect benefit as a result of the transaction derived from the ownership of stock or the holding of their position is not enough of a pecuniary interest to trigger the application of the main purpose rule. In order for the main purpose rule to apply there must be some other expected benefit or advantage to the promisor. Burlington Industries, Inc. v. Foil, 202 S.E.2d 591, 598 (N.C. 1974). In the cases where a director or stockholding promisor has been found to have a sufficient pecuniary interest, the promisor owns almost all of the company's stock, or for other reasons the promisor has an overwhelming personal interest in the transaction. See e.g. May v. Haynes, 114 S.E.2d 271 (N.C. 1960) (promisor was found to have pecuniary interest where he owned 41 of the corporation's 43 shares of capital stock, while his wife owned the remaining two).

Although Cox was a minority owner, his 49% interest was significantly greater than the

26% and 25% shares of the other two owners. Further, Cox was relying solely on the advancements from FRS to pay his $78,000 salary and health insurance benefits. The Plaintiff has also submitted evidence that Cox used the funds advanced by FRS to fund a $15,000 addition to his home and to buy Christmas presents for his family. Based on this evidence a rational juror could find that Cox had a significant pecuniary interest in the transaction in question.

Because there appears to be a genuine issue of material fact as to Plaintiff's remaining claim, summary judgment is inappropriate in this case.

IT IS THEREFORE ORDERED that Defendant Ronald M. Cox's Motion for Summary Judgment is hereby DENIED. This matter is set for trial during the August 2008 trial term.

Signed: July 1, 2008

Graham C. Mullen
United States District Judge